IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00667-NYW

CHRISTINE APRIL MARTINEZ,

      Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of SSA,[1]

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 for review of the Acting Commissioner of Social Security's final decision denying the application for Disability Insurance Benefits ("DIB") of Plaintiff Christine Martinez ("Plaintiff" or "Ms. Martinez"). Pursuant to the Order of Reference dated September 27, 2016 [#23], this civil action was referred to the Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. The court has carefully considered the Complaint filed March 22, 2016 [#1], Plaintiff's Opening Brief filed August 22, 2016 [#18], Defendant's Response Brief filed September 12, 2016 [#22], Plaintiff's Reply Brief filed September 30, 2016 [#24], the entire case file, the administrative record, and applicable

---

[1] This action was originally filed against Carolyn Colvin, as Acting Commissioner of the Social Security Administration. Commissioner Berryhill succeeded Acting Commissioner Colvin as Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this court automatically substitutes Acting Commissioner Berryhill as Defendant in this matter.

case law. For the following reasons, I respectfully REVERSE and REMAND the Commissioner's decision.

## PROCEDURAL HISTORY

In September 2012, Ms. Martinez, proceeding *pro se*, filed a Title II application for DIB.[2] Ms. Martinez finished high school and attended college but did not graduate. [#12-2 at 36].[3] She was honorably discharged from the United States Air Force in April 1994. [*Id.* at 36]. While enlisted, she worked in airfield management, "which is similar to air traffic control." [*Id.* at 36-37]. Afterward, she worked as a customer service representative for the Internal Revenue Service, a temporary day laborer, a server at a restaurant, and she pursued a civilian Air Force position as an airfield operation specialist. [*Id.* at 37-40]. Ms. Martinez alleged in the application that she became disabled on June 24, 2012, at the age of forty-three, while working as a forklift operator. [*Id.* at 37, 41]. She had taken the forklift operator position on a temporary basis while she waited to deploy with the Air Force as an airfield operation specialist. [*Id.* at 42]. She was ultimately unable to deploy due to her injury. [*Id.*]. Ms. Martinez suffers from a neck injury and pinched nerve, which causes her radiating nerve pain referred to in the record as radiculopathy.[4] Administrative Law Judge Patricia Hartman ("ALJ") denied Ms. Martinez's

---

[2] Ms. Martinez references Title XVI of the Act multiple times throughout her opening brief, *see, e.g.*, [#18 at 6, 14], but the record includes only applications for DIB pursuant to Title II, and the Administrative Law Judge issued an order limited to Plaintiff's application for DIB. *See* [#12-2 at 14].

[3] The court uses this designation to refer to the Electronic Court Filing system ("ECF") document number and the page number of the Administrative Record found at the bottom right of the page, where applicable.

[4] Radiculopathy is also known as a "pinched nerve." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 n.2 (10th Cir. 2005) (citing Cervical Radiculopathy (Pinched Nerve in Neck), at http://www.emedx.com/emedx/diagnosis_information/shoulder_disorders/cervical_radiculopathy_outli ne.htm; Radiculopathy, at http://www.back.com/symptoms-radiculopathy.html ("Doctors use the term radiculopathy to specifically describe pain, and other symptoms like numbness, tingling, and weakness in your arms or legs that are caused by a problem with your nerve roots.")).

application after an administrative hearing held September 10, 2014, at which Plaintiff was represented by counsel. [#12-2 at 14-24, 29-55].

During the hearing, Ms. Martinez testified that she has eschewed narcotic pain medicine since February 2013 and was currently taking a muscle relaxer once a day to help reduce muscle contractions and spasms. She takes Tylenol and napoxen for her pain. [#12-2 at 43]. She testified that the medication causes her drowsiness and fatigue. She also testified that lifting weight, such as groceries or laundry, and cleaning exacerbate her pain, and that the pain in general does not subside, "[i]t's just a matter of the contractions being reduced." [*Id.* at 45]. Ms. Martinez stated that on a scale of 1 to 10, with 10 "being pain so severe" she would visit the emergency room, her pain rates at 6 or 7 every day. [*Id.*] In response to the ALJ's questions, Ms. Martinez represented that she can typically sit for an hour, but she can stand for only a few minutes and, according to her doctor, is not supposed to walk beyond 200 feet. [*Id.* at 46]. She testified that she cannot carry anything with her left arm, which suffers from a pinched nerve and loss of muscle strength, but can carry twenty-five pounds of weight with her right arm. [*Id.*]. She explained that her doctor had diagnosed her with radiculopathy, "indicating that there are nerves coming out of my head and going into my shoulder across my back that are being pinched because the C-5 and C-6 disk in my cervical vertebra is dislocated." [*Id.* at 47].

Ms. Martinez also testified that in a typical day she spends time with her eleven and twelve year-old sons, "see[s] that they're fed, clothed," and stays home because she cannot work. [#12-2 at 47]. While she tries not to sleep during the day, she takes a two-hour nap, two or three times a week. She has difficulty sleeping at night because of the pressure on her shoulder, which requires her to lie on her right side. [*Id.*] She can shower, but needs help dressing at times. She fixes meals, washes dishes, vacuums, processes laundry, pays bills, attends church on Sundays,

shops for groceries once or twice a month, and eats out at a restaurant three to four times a month.  [*Id.* at 48-49].  Ms. Martinez testified that she spends two to three hours on the computer a day, responding to emails, corresponding with her mother, and using social media.  Prior to her injury, she swam, rode horses, bicycled, and was otherwise active.  [*Id.* at 50].

The Vocational Expert ("VE"), Pat Paulini, also testified during the hearing.  The ALJ queried whether the following individual could perform any of Plaintiff's previous jobs: a person who is restricted to medium work, who can only occasionally reach overhead with the upper left extremity, can frequently handle, finger, and feel with the upper left extremity, who cannot climb ladders or scaffolds, and who cannot work at unprotected heights or with dangerous unprotected machinery or vibrating tools.  [#12-2 at 52].  The VE testified that such a person could perform all of Plaintiff's previous jobs.  [*Id.*]  The VE also testified that such a person could perform work as a cashier and a counter clerk.  [*Id.*]  In response to the ALJ further restricting the hypothetical individual to sedentary work, the VE testified that such a person could perform in the position of a telephone quotation clerk and charge account clerk.  [*Id.* at 53].  Plaintiff's attorney then asked the VE to limit the hypothetical individual to light exertional work with the restriction of only occasional reaching, handling, and fingering with the upper left extremity, which is the individual's dominant upper extremity.  The VE testified that such an individual could not perform Plaintiff's previous work positions, but could work as a counter clerk or a surveillance system monitor.  [*Id.*]

The ALJ issued her written decision on September 10, 2014, concluding that Ms. Martinez was not disabled.  [#12-2 at 14-24].  Plaintiff requested a review of the ALJ's decision, which the Appeals Counsel denied on January 19, 2016.  [#12-2 at 1].  The decision of the ALJ then became the final decision of the Commissioner.  20 C.F.R. § 404.981; *Nielson v. Sullivan*,

992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted).  Plaintiff filed this action on March 22,

2015.  This court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. §

405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining

whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole.  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation

omitted); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).  The court may not reverse

an ALJ simply because she may have reached a different result based on the record; the question

instead is whether there is substantial evidence showing that the ALJ was justified in her

decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is

more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007)

(internal citation omitted).  Moreover, the court "may neither reweigh the evidence nor substitute

[its] judgment for that of the agency."  *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir.

2001), *as amended on denial of reh'g* (April 5, 2002).  *See also Lax v. Astrue*, 489 F.3d 1080,

1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by

substantial evidence.") (internal quotation marks and citation omitted).  However, "[e]vidence is

not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion."  *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation

omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously

examine the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).   "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).   The court liberally construes Ms. Martinez's briefs because she is proceeding *pro se. Wilson v. Astrue*, 249 F. App'x 1, 5 (10th Cir. 2007) (citations omitted).

## ANALYSIS

### A.    Ms. Martinez's Challenge to the ALJ's Decision

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1).   An individual is determined to be under a disability only if [her] "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 423(d)(2)(A).   The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).   Additionally, the claimant must prove she was disabled prior to her date last insured.   *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.   20 C.F.R. § 404.1520(a)(4)(v).   *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).   Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied.   *Id.*   Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations.

*Id.*; *see also* 20 C.F.R. § 404.1520(e).  If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.  *Williams*, 844 F.2d at 750.  Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d).  *Id.*  At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751.  The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work.  *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal quotation marks omitted)).  "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.[5]  *Neilson*, 992 F.2d at 1120.  The Commissioner can meet his or her

---

[5] "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's 'RFC category,' the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). *Williams*, 844 F.2d at 751-52.  However, if a claimant suffers from both exertional and nonexertional limitations, the decision maker must also consider

burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999).

The ALJ first determined that Ms. Martinez was insured for DIB through December 31, 2015. [#12-2 at 16]. Next, following the five-step evaluation process, the ALJ determined that Ms. Martinez: (1) had not engaged in substantial gainful activity since June 24, 2012; (2) had severe impairments of "obesity and C5-6 radiculopathy due to moderate to severe neuroforaminal stenosis"; and (3) did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). [#12-2 at 16-17]. At step four, the ALJ first found that Plaintiff had an RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b). The ALJ specified as follows: "[Ms. Martinez] can occasionally reach overhead with her left upper extremity. She can frequently handle, finger, and feel with the left upper extremity. She cannot climb ladders or scaffolds or work at unprotected heights or with dangerous unprotected machinery or vibrating tools." [#12-2 at 17]. The ALJ determined, after reviewing the medical evidence, that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded, after reviewing Plaintiff's reports of daily living, that statements regarding the intensity, persistence, and limiting effects of the symptoms were not "entirely credible." [*Id.* at 19]. Ultimately, the ALJ found that, "although the claimant injured her neck and left arm in June 2012, she recovered well with the use of medication and physical therapy." [*Id.* at 22].

In conclusion, the ALJ determined that Ms. Martinez "retains the residual functional capacity for a wide range of medium work," [#12-2 at 23], and relied on the VE's testimony to

---

"all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations." *Id.*

find that Ms. Martinez was capable of performing her past relevant work as an airfield management specialist, which is defined by The Dictionary of Occupational Titles as a light, skilled position, and as a server, which is defined as a light, semiskilled occupation. [*Id.* at 22]. The ALJ also determined that other jobs existed in the national economy that Plaintiff could perform. [*Id.* at 23-24]. Accordingly, the ALJ concluded that Plaintiff was not disabled.

Ms. Martinez now argues that she meets the "federal" definition of disabled, [#18 at 3-6], the ALJ should have found her disabled because she determined at step two that Ms. Martinez had severe impairments, and that her impairments qualify her as disabled pursuant to the listing of impairments. [*Id.* at 6-7, 9-13].[6] The court finds, in liberally construing Plaintiff's arguments and upon its own review of whether the ALJ's decision is supported by substantial evidence in the record, that the ALJ erred in failing to consider all of the relevant medical evidence and therefore, the determination should be remanded for further consideration by the ALJ.

---

[6] Ms. Martinez also raises several additional arguments on reply. For instance, she asserts that the ALJ "did not give sufficient weight to medical documentation, mischaracterized Plaintiff's abilities in contradiction to the Residual Functioning Capacity…, and failed to properly advise Pat Paulini, vocational rehabilitation counselor…of Plaintiff's exertional and non-exertional limitations, including Plaintiff's pain and mitigating symptoms, and her prescribed medications…[and] improperly relied on a vocational expert's opinion that did not consider all relevant evidence in the record." [#24 at 2]. With the exception of whether the ALJ properly considered the medical evidence (either within the context of step 3 or the determination of the RFC), Plaintiff failed to raise any of these arguments in her opening brief and cannot now assert them for the first time in her Reply. *Gragert v. Colvin,* No. 12–cv–02641–CMA, 2014 WL 1214028, at *5 (D. Colo. Mar. 24, 2014) (finding claimant had forfeited argument raised only in the reply) (citing *SCO Grp., Inc. v. Novell, Inc.,* 578 F.3d 1201, 1226 (10th Cir. 2009) (noting that arguments raised for the first time in a reply brief are waived) (further citations omitted). To the extent Plaintiff intended to raise these other arguments in her opening brief, she did not sufficiently develop them so as to allow any meaningful review. *See Eateries, Inc. v. J.R. Simplot Co.,* 346 F.3d 1225, 1232 (10th Cir. 2003) (concluding that appellant's superficial argument with no record citations or legal authority was "insufficient to garner appellate review"); *Murrell v. Shalala,* 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (citing *Adams–Arapahoe Joint School Dist. v. Continental Ins. Co.,* 891 F.2d 772, 776 (10th Cir. 1989) (issue not formally designated is waived; mere mention in context of another matter is not enough)). Accordingly, this court will address only those arguments identified in the opening brief and to which Defendant had an opportunity to respond.

**B.      ALJ's Consideration of Severe Impairments**

The ALJ found at step two that Plaintiff had severe impairments characterized as obesity and C5-6 radiculopathy due to moderate to severe neuroforaminal stenosis.  Plaintiff does not argue that the ALJ should have listed additional impairments as severe, but that the ALJ should have determined her disabled on account of the radiculopathy at either step 2 or 3.  *See generally* [#18].

1.      "Federal" Definition of Disability

As Defendant notes, Ms. Martinez cites the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101, *et seq*., in support of her first argument that she meets the federal definition of disabled.  *See* [#18 at 3].  The ADA "seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity," and requires a fact-specific analysis of whether a particular, disabled individual can perform a certain job with or without reasonable accommodation.  *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 801 (1999) (citing 42 U.S.C. § 12111(8)).  By contrast, the Act entitles an individual to disability benefits if her physical or mental impairment or impairments "are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d).  While a finding of disability under one Act can inform as to disability under the other Act, the definition of disability under the ADA does not control the determination of disability under the Social Security Act for the purpose of awarding benefits.  *See Cleveland*, 526 U.S. at 801 ("The Social Security Act and the ADA both help individuals with disabilities, but in different ways."); *Johnson v. State, Oregon Dept. of Human*

*Resources, Rehabilitation Div.*, 141 F.3d 1361, 1366-67 (9th Cir. 1998) (citing *Swanks v. Washington Metro. Area Transit Auth.,* 116 F.3d 582, 586 (D.C. Cir. 1997) ("The ADA and the disability provision of the Social Security Act have different purposes, and have no direct application to one another") (further citation omitted)). *See also Toscano v. Warren County Dept. of Human Services*, 323 F. App'x 120, 122 (3d Cir. 2009) (holding disability as recognized under the ADA is not synonymous with disability that entitles a person to social security benefits). Accordingly, whether Plaintiff qualifies as disabled under the ADA was not a question before the ALJ and does not bear on the court's review of the ALJ's decision.

    2.   <u>Step 2 Determination</u>

Plaintiff next argues that in finding she had severe impairments at step two, the ALJ erred in ultimately concluding that she is not disabled. [#18 at 7]. Contrary to Plaintiff's position, step two does not provide an opportunity for ALJs to award benefits, but rather to proceed with the subsequent inquiry into whether the claimant can perform substantial gainful activity within the economy. The term "impairment" is not synonymous with "disability," and step two represents an early stage of the administrative process, at which ALJs may "weed out…those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 156 (1987) (O'Conner, J., concurring). *See also Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004). Thus, an ALJ ends the evaluation at step two, and denies benefits, only if he or she finds the claimant does not have an impairment or combination of impairments that would have more than a minimal effect on the claimant's ability to do basic work activities. *Williams*, 844 F.2d at 750. Upon finding that a claimant has a severe impairment, as the ALJ found here, the five-step evaluation described above requires the ALJ to proceed to step 3.

3.   Subsequent Steps

Ms. Martinez generally argues that her impairment is such that the ALJ should have determined her to be disabled.  Though she does not attribute it to a particular step, this court construes this argument as a challenge to the either the ALJ's determination at step 3 that her severe impairment is not equivalent to a listing, or as a challenge to the RFC as formulated by the ALJ, as Ms. Martinez's asserts the ALJ "did not give sufficient weight to medical documentation."[7]  On reply, Ms. Martinez asks the court to review an October 2012 Med-9 form completed by her Veterans Affairs ("VA") primary care nurse practitioner, Nenette McNamera, and records authored by three VA primary care physicians: Richard J. Oh, M.D.; Peter Torberntsson, M.D.; and Joseph P. Pineau, M.D.  *See* [#24 at 4-5].  Ms. Martinez argues that these records support a finding that her impairment is permanent.  [*Id.*]  The ALJ reviewed the Med-9 form and Nurse McNamera's assessment, *see* [#12-2 at 20], and this court finds no basis to disturb the ALJ's findings with respect to those records.

However, the ALJ did not address the records generated by Drs. Oh, Torberntsson, or Pineau, which state as follows.  On September 23, 2013, Dr. Oh observed that, with respect to Plaintiff's C5-6, while "[t]here is mild circumferential disc bulge without significant canal stenosis," there is also "moderate to severe left neural foraminal narrowing secondary to disc osteophyte complex."  [#12-12 at 576-577].  Records from a follow up appointment on November 20, 2013 with Dr. Torbernstsson again indicate "severe C5/6 left neuroforaminal narrowing," although they also state that Plaintiff's April 2013 EMG was negative for radiculopathy.  [*Id.* at 660].  Finally, on February 13, 2014, Dr. Pineau observed that an MRI indicated Plaintiff "has nerve root impingement on the left at C4-5-6."  [*Id.* at 595].

---

[7] In either case, Ms. Martinez bears the burden of proof.  *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (1993).

While an ALJ is not required to discuss every piece of evidence in the record, she must discuss the evidence supporting her decision and also "must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as the significantly probative evidence [s]he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir. 1996); 20 C.F.R. § 404.1520(a)(3), (e). *See also Holcomb v. Astrue*, 389 F. App'x 757, 760 (10th Cir. 2010) ("[T]he ALJ is required to consider all relevant evidence in the record, including opinions from medical and non medical sources who have treated the claimant") (citing Social Security Ruling 06–03p, 2006 WL 2329939, at *4 (Aug. 9, 2006)); *Grogan*, 399 F.3d at 1262 (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)).  The court will not reweigh the evidence, but must nonetheless "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citing *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir. 1994)).

The ALJ found that Ms. Martinez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements concerning "the intensity, persistence, and limiting effects" of the symptoms were not entirely credible in light of the objective medical evidence indicating reduced symptoms and her testimony regarding her daily activities.[8]  [*Id.* at 19].  For example, the ALJ found that Plaintiff's recovery "is demonstrated by consistent improvement in objective medical signs and findings from June 29, 2012 to March 2013…by a normal EMG in April 2013, and by cervical x-rays showing improvement in her subluxation of her cervical vertebrae so that the condition was deemed only mild." [*Id.* at 22 (citing #12-12 at 576-578)].  This court concludes that the records authored by Drs. Oh, Torberntsson, and Pineau represent probative evidence that the ALJ was required to

---

[8] Ms. Martinez does not challenge the ALJ's determination of her credibility.

discuss in her findings.  Because the ALJ failed to mention these records, this court cannot determine if she rejected the findings contained therein, and, if so, why, or determined the findings were tempered by other medical records, or simply overlooked them.  While the ALJ may conclude on remand that the VA records do not impact her disability determination, she must indicate why she reaches that outcome.[9]

In addition, in one section of the RFC determination, the ALJ states that Plaintiff can perform "light" work [#12-2 at 17], but then concludes by stating that Ms. Martinez has been capable of performing a wide range of "medium work as described in Finding 5 of the RFC."[10] [*Id.* at 22].  Upon remand, the ALJ should clarify the RFC, in light of the additional medical evidence.

4.  <u>Musculoskeletal Listing</u>

Lastly, Ms. Martinez argues that her impairment meets the Social Security listing.  At step three, the determination is made "whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751.  Thus, an ALJ may truncate the five-step evaluation if he or she finds that the severe impairment meets or equals the severity of a listed

---

[9] The court properly addresses this matter even without affording Plaintiff a liberal construction of her arguments, given its independent responsibility to examine whether substantial evidence supports the ALJ's opinion. *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008) (citation omitted) (observing that a reviewing court may not "abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable").

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. *Id.* at § 404.1567(c).  If an individual can perform medium work, she can also perform "light" and "sedentary work." *Id.*

impairment. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) ("At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits."). The impairment or combination of impairments must satisfy the listing for at least twelve consecutive months, *see Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002), and a claimant has the burden to establish that her impairment(s) meet a listing set forth at 20 C.F.R., pt. 404, subpt. P, app. 1. *See Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

Plaintiff argues the ALJ erred in failing to find that her impairment(s) meet the criteria of section 1.00, regarding musculoskeletal issues, but she does not specify which of the seven listings within section 1.00 applies to her condition. *See* [#18 at 9-10]. Defendant contends that by not identifying a specific listing, Plaintiff has waived this argument. [#22 at 10]. Although Defendant is correct that the court should consider and discuss only those contentions that a claimant has adequately briefed, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), I am mindful that Plaintiff is proceeding *pro se* and that the court is required to afford her arguments a liberal construction. Thus, I will consider Plaintiff's argument within the context of the medical listing identified and discussed by the ALJ in her opinion.

Here, the ALJ considered Listing 1.04(A) and found that Plaintiff's impairment did not meet the listing criteria. Listing 1.04(A) reads:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or

reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
*or*
B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
*or*
C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04 (emphasis added).  The ALJ recognized the following: the C5-6 radiculopathy was initially characterized "by some nerve root compression with neuro-anatomic distribution of pain and limitation of motion of the spine"; a June 2012 exam revealed "-5/5 hand grip," but also that Plaintiff's deep tendon reflexes and sensation were intact; and October 2012 medical notes reported grip weakness, arm numbness, and Plaintiff's inability to lift her left arm overhead.  [#12-2 at 17 (citing #12-7 at 268, 252-253)].  The ALJ then considered that "most of these symptoms had resolved" by November 2012, [*id.* (citing #12-8 at 400-402, #12-9 at 403-406], and that by February 2013, Plaintiff's "radicular symptoms had begun to resolve despite some ongoing reduction in strength and range of motion."  [*Id.* (citing #12-8 at 303-304)].  The ALJ thus concluded that the medical evidence demonstrated "only brief loss of sensation," rather than reflex or motor loss.  [*Id.*] [11]

"To show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."  *Lax*, 489 F.3d at 1085 (citing 20 C.F.R. § 404.1525).  If the ALJ finds that the claimant does not meet a listed impairment, she is "required to discuss the

---

[11] The ALJ also considered whether Plaintiff's obesity combined with her spinal issue might meet a medical listing and determined from the record evidence it did not.  [#12-2 at 17].

evidence and explain why [s]he found that [the claimant] was not disabled at step three." *Morgan v. Astrue*, 236 F. App'x 394, 396 (10th Cir. 2007) (quoting *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)).  While the ALJ is not required to discuss every piece of evidence, the record must nonetheless demonstrate that the ALJ considered all of the evidence.  *Id.*

I find that the above discussion concerning the VA records applies equally to Plaintiff's contention regarding whether the ALJ erred at step three.  Without mention of these records in her opinion, I cannot find that the ALJ considered all of the evidence in determining that Plaintiff's impairments do not meet the severity of a listed impairment.

## CONCLUSION

For the reasons set forth herein, the court respectfully **REVERSES and REMANDS** the Commissioner's decision for further consideration at step three and any subsequent steps, including the determination of the appropriate RFC, of the impact, if any, of the medical records authored by Drs. Oh, Torberntsson, and Pineau.

DATED: March 23, 2017                    BY THE COURT:


s/ Nina Y. Wang_____
United States Magistrate Judge